# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELAINA R., substituted for<br>ANNA R.[1], deceased[2],<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 6:21-cv-1683-SI<br><br>OPINION AND ORDER |

Bruce W. Brewer, LAW OFFICES OF BRUCE W. BREWER PC, P.O. Box 421, West Linn, OR 97068.
Of Attorney for Plaintiff.

Natalie K. Wright, United States Attorney, and Kevin Danielson, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party in this case. When applicable, this Opinion and
Order uses the same designation for a non-governmental party's immediate family member.

[2] In this opinion, the Court uses "Plaintiff" to refer to the deceased claimant, Anna R.,
although Elaina R. has been substituted for Anna R. in this case.

PAGE 1 – OPINION AND ORDER

Elaina R., substituted for the deceased Anna R., brings this appeal challenging the decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and supplemental security income (SSI) under Title XVI of the Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for an award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on April 12, 2019, initially alleging a disability onset date of March 20, 2017. AR 69-70. By letter shortly before her hearing, Plaintiff amended her disability onset date to November 30, 2017. AR 231. Plaintiff was born May 23, 1976. AR 204. She was 41 years old as of the amended alleged onset date of November 30, 2017. AR 231. Plaintiff alleged that she suffered from posttraumatic stress disorder (PTSD), anxiety, depression and agoraphobia. AR 69-70; *see also* AR 311. Disability Determination Services denied her applications initially and upon reconsideration. AR 92, 111. Plaintiff then requested a hearing with an Administrative Law Judge (ALJ). Plaintiff had a hearing before ALJ Debra L. Boudreau on February 9, 2021. AR 33. The ALJ issued an opinion denying Plaintiff's claims on March 4, 2021. AR 26. Plaintiff appealed the decision to the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner. AR 1. This appeal followed, filed on November 20, 2021. Plaintiff's prior counsel was notified of Plaintiff's death on November 17, 2021. ECF 18 at 2.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

     5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a threshold matter for Plaintiff's DIB claim, the ALJ determined that Plaintiff met the insured status requirement of the Act through December 31, 2021. AR 19. At step one of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity after November 30, 2017, the amended alleged onset date. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, PTSD with features of anxiety, and insomnia. *Id.* At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19-21.

The ALJ next determined that Plaintiff has the RFC to perform sedentary work as defined

in 20 C.F.R. 404.1567(1) and 416.967(a), with the following limitations:

> [S]he can occasionally climb stairs and ramps, but should avoid
> work involving ladders, ropes, or scaffolds, or at unprotected
> heights. She is able to constantly balance and occasionally stoop,
> kneel, crouch, and crawl. She is able to tolerate occasional work in
> extreme heat or cold, and occasional exposure to concentrated
> pulmonary irritant, such as fumes, odors, dusts, and gases. She can
> understand and remember simple, routine tasks that can generally
> be learned by demonstration on the job in a 30-day period. These
> tasks should involve few variables and little judgment. She is able
> to sustain concentration, persistence, and pace for these tasks over
> a typical workday and workweek. She is able to tolerate superficial
> interactions with coworkers that are incidental to the work
> performed. She is able to tolerate brief superficial interaction with
> the public, and simple, direct supervision on a constant basis. She
> is able to tolerate occasional routine task changes. She is able to
> travel and to recognize and avoid work hazards.

AR 21. At step four, the ALJ determined that Plaintiff was not capable of performing her past

relevant work as a restaurant shift manager, hotel desk clerk, or accounts payable/receivable

clerk. AR 24. At step five, the ALJ determined that Plaintiff can perform jobs existing in

significant numbers in the national economy. AR 25-26. Accordingly, the ALJ concluded that

Plaintiff was not disabled from the amended alleged onset date through March 4, 2021, the date

of the ALJ's decision. AR 26.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective

symptom testimony; (2) improperly discounting the testimony of Plaintiff's mental health

practitioner, Kimberly Richards, LPC, MS, NCC; and (3) improperly rejecting the third-party

statement of Plaintiff's daughter without explanation.

## A.  Plaintiff's Symptom Testimony

### 1.  Legal Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *see also Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. Analysis

Plaintiff testified regarding her significant limitations from her PTSD and agoraphobia. For example, Plaintiff testified that due to her symptoms, she doesn't interact well with anyone except for her daughter, and that she cannot take care of herself. AR 53, 55. The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms and did

not find evidence of malingering. AR 22. The ALJ then concluded that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the record, "because [Plaintiff's] treatment records do not fully support her alleged level of limitation, indicating a lesser degree of isolation than she has alleged." *Id.*

### a. Specificity of the ALJ's reasons

Plaintiff argues that the ALJ failed to link any contradictory or inconsistent record evidence to the testimony she discounted and that the evidence the ALJ did cite was consistent with Plaintiff's claims. The Court agrees that the ALJ was insufficiently specific in her reasoning for discounting Plaintiff's testimony.

The ALJ stated that Plaintiff's testimony about the intensity, persistence, and limiting effects of Plaintiff's symptoms was "inconsistent" with the record "because her treatment records do not fully support her alleged level of limitation, indicating a lesser degree of isolation than she has alleged." AR 22. The ALJ then recounted Plaintiff's medical history in detail. A detailed overview of a claimant's medical history, however, does not suffice to discount a plaintiff's testimony. *See Lambert*, 980 F.3d at 1278. "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that providing a "relatively detailed overview" of a claimant's medical history "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible" (cleaned up) (emphasis in original)). With only a single exception, discussed below, the ALJ did not link Plaintiff's medical history to any particular testimony from Plaintiff about her symptoms nor

discuss the effect of specific medical evidence on the limitations to which Plaintiff testified. The failure to do so leaves the Court largely unable to evaluate the ALJ's reasoning or whether the ALJ's determination was supported by substantial evidence. This was legal error. *See Brown-Hunter*, 806 F.3d at 494.

There is a single instance in the ALJ's discussion where the ALJ sufficiently linked record evidence to a specific portion of Plaintiff's symptom testimony, thereby permitting the Court to evaluate the sufficiency of the ALJ's reasoning for rejecting that portion of Plaintiff's testimony. The ALJ highlighted treatment notes in which Plaintiff "reported a panic attack after seeing someone at a store who had previously evicted her, causing her to want to leave the store," and noted that "this encounter occurred after the date that the claimant testified that she stopped visiting public places." AR 22-23 (citing AR 423). Though even this statement is not a model of specificity, the ALJ sufficiently linked particular evidence to particular testimony to enable the Court to evaluate whether the evidence provides a clear and convincing reason to discount this portion of Plaintiff's testimony.

The Court determines that the cited evidence does not provide a clear and convincing reason for discounting this portion of testimony. First, the evidence cited by the ALJ is consistent with Plaintiff's testimony. During the identified trip to the grocery store, Plaintiff suffered a panic attack. This is consistent with Plaintiff's testimony that she struggled with severe fear and distress in public. *See, e.g.*, AR 46-47. That Plaintiff "could participate in some daily activities does not contradict the evidence of otherwise severe problems" that she faced in her daily life over during the relevant period. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017). Second, Plaintiff testified that she had difficulty remembering dates but that she *believed* the last time she had gotten out of her car in public was in April 2019. AR 46. That the estimated date

Plaintiff gave was incorrect does not provide a clear and convincing reason to discount Plaintiff's

symptom testimony. Third, even if the evidence were inconsistent with Plaintiff's testimony, a

citation to a single instance of improvement is not a clear and convincing reason to reject

Plaintiff's testimony. *See, e.g.*, *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) ("A

single discrepancy fails . . . to justify the whole sale dismissal of a claimant's testimony.");

*Garrison*, 759 F.3d at 1017 ("Reports of improvement in the context of mental health issues

must be interpreted with an understanding of the patient's overall well-being and the nature of

her symptoms.") (quotation marks omitted). The ALJ's reason for discounting this portion of

Plaintiff's testimony is not supported by substantial evidence.

### b.  *Post-hoc* explanations by the Commissioner

The Commissioner argues that objective medical findings, such as Plaintiff's normal

mental status examinations, are inconsistent with Plaintiff's testimony that she had a "difficult

time remembering." *See* AR 50. The ALJ, however, did not link mental status examinations to

that testimony. *See* AR 22-23. The Commissioner also argues that the ALJ noted activities that

contradicted the severity of limitations testified to by Plaintiff. Other than the single instance

discussed above, the ALJ did not link Plaintiff's activities to specific testimony as reason for

finding inconsistency. The Court must disregard *post hoc* explanations by the Commissioner. *See*

*Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the

ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc*

rationalizations that attempt to intuit what the adjudicator may have been thinking."). The

alleged inconsistency between Plaintiff's testimony, activities, and the objective medical

evidence offered by the Commissioner does not provide a clear and convincing reason to

discount Plaintiff's subjective symptom testimony.

### 3.  Harmless error

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

The ALJ's decision to discredit Plaintiff's symptom testimony was not harmless error because Plaintiff testified to symptoms and limitations not fully incorporated into her RFC or ultimate disability determination. Because the ALJ did not fully account for Plaintiff's symptom testimony at step three or in Plaintiff's RFC calculation, Plaintiff suffered prejudice. The ALJ's error was harmful.

## B. Opinion of Kimberly Richards

Plaintiff filed her application for benefits on April 12, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

The ALJ found that Ms. Richards's statements "regarding the claimant's functioning in various mental areas" were "not persuasive, as they are not well supported by treatment notes." AR 24. The ALJ also found that Ms. Richards's opinion "regarding the persistence of the claimant's limitations, indicating that [Plaintiff] has been fully isolate[d] since the start of treatment in 2018, are not consistent with treatment notes indicating activity outside of the home

into 2020." *Id.* The ALJ did not cite any specific evidence in support of either the supportability or the consistency finding. Plaintiff argues that the ALJ's finding is inaccurate and not supported by substantial evidence. The Commissioner argues that the ALJ's finding should be upheld because the ALJ sufficiently addressed both the supportability and the consistency of Ms. Richards's opinion.

As a threshold matter, the ALJ mischaracterized Ms. Richards's opinion. Ms. Richards provided her opinion to the ALJ in the form of a questionnaire that assessed Plaintiff's mental functioning (AR 565-68) and in a letter supplementing that questionnaire (AR 658-60). Ms. Richards *did not* state in either document that Plaintiff had been fully isolated since 2018. Instead, in the questionnaire, Ms. Richards assessed Plaintiff's degree of limitation in four categories of mental functioning and shared that in each assessed category Plaintiff's mental health conditions would preclude performance or productivity for between 10 and 30 percent of an eight-hour workday. AR 565-67. Ms. Richards opined in the questionnaire that, as a result of Plaintiff's mental health conditions, Plaintiff would likely be absent from work for five or more days because she experienced "severe PTSD distress" that "cause[d] her to isolate and that would impact her ability to work." AR 568.

In the supplemental letter to the ALJ, Ms. Richards explained that Plaintiff "suffer[ed] from a severe form of Agoraphobia," and that the "intrusions, anxiety, and paranoia ha[d] completely debilitated" Plaintiff. AR 658. Ms. Richards stated that the "only significant interactions [Plaintiff] ha[d] with others besides telehealth, is with her daughter, her daughter's boyfriend, and her grandchild," and that Plaintiff had "been this way since I began treating her." *Id.* Ms. Richards's letter then describes the substantial impact that Plaintiff's mental health conditions had on Plaintiff's life, explaining that Plaintiff had lived in a shed on the property of

her ex-husband's parents, and that, despite a lack of running water in the shed, she rarely entered the home on the property. *Id.* The only bathroom available to Plaintiff was an outhouse, which was the only location on the property in which Plaintiff had sufficient cell phone reception to attend her telehealth appointments. AR 659. Ms. Richards explained that it was extremely difficult for Plaintiff to attend in-person therapy sessions, and that Ms. Richards had worked with Plaintiff to implement telehealth therapy sessions as a solution to the barriers to treatment caused by Plaintiff's severe fear of leaving home. Ms. Richards also described helping Plaintiff find a primary care physician. Ms. Richards explained that because of her advocacy, Plaintiff was able to meet with the primary care physician during off-hours so that Plaintiff did not have to be around other people during her medical appointments. Ms. Richards explained that references to Plaintiff "doing well" or having a "stable mood" require contextual explanation and that if compared to a "normal" individual, even when Plaintiff was "doing well" she was unable to effectively function outside of the house. *Id.* Ms. Richards expressed her opinion that it was not possible for Plaintiff to gain or sustain employment because of the severity of her symptoms of anxiety and distress. *Id.*

The Court rejects the ALJ's finding that Ms. Richards's opinion is not well supported by treatment notes. The treatment notes from Ms. Richards and other medical and mental health professionals consistently documented Plaintiff's agoraphobia, isolation, and corresponding symptoms of anxiety and paranoia. *See, e.g.*, AR 341 (treatment notes from February 5, 2019 indicating that Plaintiff "discussed anxiety increasing" and "reported feeling overwhelmed"); AR 556 (treatment notes from October 15, 2019 indicating that Plaintiff reported continuing anxiety when going to the grocery store and even to medical appointments and "[a]voids going places due to anxiety"); AR 554 (treatment notes from December 3, 2019 indicating that Plaintiff

"expressed fear and anxiety around other [people] and not trusting others"); AR 551 (treatment

notes from December 17, 2019 indicating that Plaintiff reported "struggling with social anxiety

and avoids going places" and that even coming to the appointment is difficult for her); AR 643

(treatment notes from July 20, 2020 indicating that Plaintiff "reports extreme fear around leaving

her shed"); AR 647 (treatment notes from September 17, 2020, indicating that Plaintiff

"continues to further isolate self"); AR 648 (treatment notes from November 10, 2020 indicating

that Plaintiff's "panic symptoms are extreme and severely interfere with her life" and that

Plaintiff "discussed rarely leaving the 'shed' where she lives"); AR 653 (treatment notes from

December 14, 2020 indicating that Plaintiff experienced "increased panic symptoms of distress"

and "reported little contact with others, and decreased leaving of her shed").

The Court also disagrees with the ALJ's findings that Ms. Richards's opinions are

inconsistent with Plaintiff's activities as documented in treatment notes. First, the ALJ cited no

evidence in the record to demonstrate which treatment notes contained documentation of

activities inconsistent with Ms. Richards's opinions. Further, Ms. Richards specifically explained

that any references to Plaintiff's mental health improvements must be viewed in the context of

Plaintiff's overall functioning, and the Court agrees. *See Holohan v. Massanari*, 246 F.3d 1195,

1205 (9th Cir. 2001) (a medical provider's "statements must be read in the context of the overall

diagnostic picture"). Because Ms. Richards's testimony, when properly characterized, is

consistent with the record overall and is well supported by treatment notes, the ALJ's

determination that Ms. Richards's testimony is unpersuasive is not supported by substantial

evidence. This was harmful error.

### C. Lay Witness Testimony

Plaintiff also argues that the ALJ erred by rejecting the lay testimony of Plaintiff's

daughter, Elaina R. The ALJ effectively rejected Elaina R.'s testimony by ignoring it in her

opinion. The Commissioner argues that the ALJ was not required to articulate how she considered the lay witness testimony. The Commissioner relies on revised regulations describing how to evaluate *medical opinion* testimony. *See* 20 C.F.R. §§ 404.1520c; 416.920c. These regulations state that the evaluation of *nonmedical* testimony does not have to apply the standards for medical opinion testimony, but they do not state the standard for nonmedical opinion testimony. 20 C.F.R. §§ 404.1520c(d); 416.920c(d). The standard for nonmedical opinion testimony has previously been established by the courts and did not need to be explained in a regulation changing how *medical testimony* was to be evaluated. The Court has repeatedly found the Commissioner's argument unpersuasive. *See, e.g., Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) ("[T]he amended regulations . . . do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements."); *see also Dale M. v. Kijakazi*, 2023 WL 1815530, at *10 (D. Or. Feb. 8, 2023); *John H. v. Kijakazi*, 2022 WL 8035418, at *8 (D. Or. Oct. 14, 2022). The Court finds it unpersuasive here for the same reasons.

The Commissioner alternatively argues that Elaina R.'s testimony mirrored Plaintiff's subjective symptom testimony and that the ALJ's rejection of the testimony was thus supported by substantial evidence. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ, however, failed to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony. Thus even assuming Elaina R.'s testimony mirrored Plaintiff's testimony, the Commissioner is unable to rely on the reasons asserted by the ALJ in discounting Plaintiff's testimony to discount Elaina R.'s testimony. The ALJ's failure to provide any reasons for rejecting the lay testimony therefore also constitutes harmful error.

## D.  Credit-as-True Doctrine and the Utility of Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id*. If so, the district court can exercise its discretion to remand for an award of benefits. *Id*. The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id*. at 408.

Plaintiff argues that there is no need to develop the record and urges the Court to exercise its discretion to remand for an award of benefits. The Commissioner argues that if the Court finds harmful legal error the appropriate disposition is to remand this matter for further administrative proceedings. The Court finds no utility in further proceedings and for this reason remands for the award of benefits.

There is no ambiguity in the record or need for further factual development. Crediting as true Plaintiff's symptom testimony, Ms. Richards's opinions, and Elaina R.'s statements,

Plaintiff suffered from severe limitations in two or more categories of mental functioning. In addition, Ms. Richards's questionnaire specifically described how Plaintiff's mental health conditions affected Plaintiff's performance and productivity in four categories of mental functioning to such a degree that Plaintiff would be off-task for up to 30 percent of an eight-hour workday. *See* AR 565-68. The VE testified that, in his experience, an employee in an unskilled position typically cannot be off-task for more than five percent of an eight-hour workday without such behavior resulting in termination. AR 64. The VE further testified that an employee who is off-task for 20 or 30 percent of a workday is "significantly off-task," and that this type of behavior would "eliminate competitive employment" and that such a hypothetical situation "eliminates all jobs totally." AR 62-63. Ms. Richards also opined that Plaintiff's mental health conditions would likely result in Plaintiff's absence from work five days or more per month. AR 568. The VE testified that "one unscheduled [absentee] day per month is typically what most personnel policies allow." AR 64. Thus, the credited-as-true statements from Plaintiff, Elaina R., and Ms. Richards, in combination with the other record evidence and certain testimony of the VE, leaves no ambiguity and supports a finding that Plaintiff was disabled and unable to sustain employment. Finally, Plaintiff is deceased. The record is closed. There is no utility in further administrative proceedings, and remand for the award of benefits is appropriate.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for an immediate calculation of an award of benefits.

**IT IS SO ORDERED**.

DATED this 25th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge